IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RAEMONA SUE PERRY, individually, and as Personal Representative of the Estate of LOUIS G. PERRY, deceased,<br><br>    Plaintiff,<br><br>v.<br><br>(1) BEBE BRIDGES, an individual, and<br><br>(2) CRAIG LADD, District Attorney for the 20th Judicial District of Oklahoma,<br><br>    Defendants. | Case No. CIV-12-310-RAW |

## ORDER

  Plaintiff brought this action against Craig Ladd, the District Attorney for the Twentieth District of Oklahoma, and Bebe Bridges, a private attorney the Perrys hired to represent them in bond exoneration proceedings. The Complaint lists the following claims against Craig Ladd: (1) 42 U.S.C. § 1983 claims of violation of Plaintiff's civil rights under the Fourth, Fifth, Sixth and Fourteenth Amendments, (2) civil conspiracy, (3) intentional interference with a contractual relationship, and (4) malicious prosecution and abuse of process.[1] Before the court is Craig Ladd's motion to dismiss [Docket No. 21]. Craig Ladd has asserted the defenses of absolute and qualified immunity and further argues that Plaintiff's claims fail in any event. For the reasons delineated below, the motion is granted.

---

[1] The Complaint also listed claims against Bebe Bridges only for negligence, breach of contract and breach of fiduciary duty.

**FACTUAL ALLEGATIONS IN THE COMPLAINT**

For purposes of the motion to dismiss, the court accepts as true all of the well-pleaded factual allegations in Plaintiff's Complaint and construes those facts in the light most favorable to Plaintiff. See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1284 (10th Cir. 2008). Following are the pertinent well-pleaded factual allegations listed in the Complaint. Conclusory statements and legal conclusions in the Complaint are not included.[2]

On or about July 15, 2010, Ms. Bridges agreed to provide legal services to Mr. and Mr. Perry, reputable bondsmen, for the purpose of representing them in a proceeding to exonerate a bond written on a defendant in a Carter County criminal case who had failed to appear in violation of the bond. On July 19, 2010, the Perrys met with Ms. Bridges and her assistant J.D. Testerman to discuss the case. The Perrys told Ms. Bridges they would pay her a fee of $10,000.00 for a successful exoneration of the bond. The Perrys also asked if they could make a payment to the District Attorney or the Court Fund to have the bond exonerated. Ms. Bridges told the Perrys that such payments would be illegal and the issue was dropped.

Ms. Bridges did not file the motion to exonerate the bond as the Perrys believed she would. Instead, Ms. Bridges went to Craig Ladd's office and told him along with investigators and law enforcement officers the content of her communications with the Perrys. Mr. Ladd then provided recording devices to Ms. Bridges. On July 20, 2010, Ms. Bridges called the Perrys. The call was recorded and monitored by Mr. Ladd and others. Ms. Bridges told the Perrys that she had been mistaken in her previous advice and asked the Perrys if they would want to meet

---

[2]"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

with the District Attorney who would agree to exonerate the bond for $5,000.00. The Perrys assumed that Ms. Bridges would not advise them to commit a criminal act and agreed.

On or about July 20, 2010, Mr. Ladd prepared a fake order of exoneration and enlisted a judge to sign it for investigative purposes only. On July 21, 2010, the Perrys met with Ms. Bridges. They gave her $5,000.00 for the District Attorney and $10,000.00 for her attorney fee. Ms. Bridges recorded the meeting. She showed the Perrys the fake order of exoneration and told them she would need to file it. Thereafter, the Perrys were arrested and incarcerated. On July 26, 2010, Mr. Perry committed suicide.

**MOTION TO DISMISS**

To survive the motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plaintiff must nudge her "claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557) (internal quotations omitted). In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." Id. at 679.

> The Tenth Circuit has concluded that
>
> the Twombly / Iqbal standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do. In other words, Rule 8(a)(2) still lives.

> Under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.

Burnett v. Mortgage Elec. Registration Sys., Inc. 706 F.3d 1231, 1236 (10th Cir. 2013) (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012)). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679). "This contextual approach means comparing the pleading with the elements of the cause(s) of action." Id. "'[W]hile Plaintiff is not required to set forth a prima facie case for each element, she is required to set forth plausible claims' animating the elements of her action." Id. (quoting Khalik, 671 F.3d at 1193).

**ABSOLUTE IMMUNITY**

The Supreme Court has held that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). A prosecutor is entitled to absolute prosecutorial immunity for any acts performed as part of his or her role as a prosecutor, an advocate for the state. Id.; Imbler v. Pachtman, 424 U.S. 409 (1976). Prosecutorial immunity encompasses not only a prosecutor's conduct of a trial, but all activities that can fairly be characterized as closely associated with the conduct of litigation. Imbler, 424 U.S. at 430-31.

The Supreme Court has also "made clear that absolute immunity may not apply when a prosecutor is not acting as "an officer of the court," but is instead engaged in other tasks, say, investigative or administrative tasks." Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009). When a prosecutor acts as an investigator rather than as an officer of the court, the prosecutor is

entitled to qualified immunity.  See Buckley, 509 U.S. at 273.

**QUALIFIED IMMUNITY**

Qualified immunity balances two very important interests – "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Id.

When a defendant raises a qualified immunity defense, the court employs a two-part test. "In resolving a motion to dismiss based on qualified immunity, a court must consider [1] whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and [2] whether the right at issue was clearly established at the time of defendant's alleged misconduct." Brown v. Montoya, 662 F.3d 1152 (10th Cir. 2011) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993).[3] "Whether a right is 'clearly established' is an objective test: 'The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting Stearns v. Clarkson, 615 F.3d 1278, 1282 (10th Cir. 2010). "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Id. (quoting Stearns v. Clarkson, 615 F.3d 1278, 1282 (10th Cir. 2010).

---

[3]District courts are permitted to exercise "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." Pearson, 555 at 236.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083 (2011). Qualified immunity protection will apply regardless of whether the officer's mistake is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231.

**CONSTITUTIONAL CLAIMS**

### Fourth Amendment

Plaintiff first claims that Mr. Ladd violated the Perrys' Fourth Amendment right to be secure against unreasonable searches. Compl., p. 5. There was no actual search. Plaintiff argues that the recording of the Perrys' conversations with Ms. Bridges was essentially the unreasonable search. According to the Complaint, Ms. Bridges consented to and assisted in the recording of her conversations with the Perrys. When one party consents to a conversation being recorded, the Fourth Amendment is not violated. United States v. White, 401 U.S. 745, 747-54 (1971); United States v. McKneely, 69 F.3d 1067, 1073 (10th Cir. 1995); United States v. Davis, 1 F.3d 1014, 1016 (10th Cir. 1993). Plaintiff has failed to state a claim of a constitutional violation. This claim fails and Mr. Ladd is entitled to qualified immunity.

### Fifth Amendment

Plaintiff next claims that Mr. Ladd violated the Perrys' Fifth Amendment right to not be compelled in any criminal case to be a witness against themselves. Compl., p. 5. "The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, . . . requires that '[n]o person . . . shall be compelled *in any criminal case* to be a *witness* against himself." Chavez v.

Martinez, 538 U.S. 760, 766 (2003) (citations omitted).  Of course, self-incriminating statements compelled by or made to police prior to a Miranda warning may not be used against a defendant at trial, "but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs."  Id. (citations omitted).

Plaintiff did not allege that the Perrys were required to testify against themselves at trial or that inadmissible statements made by them were used at trial.  Plaintiff has not stated a claim for a violation of the Self-Incrimination Clause.  Furthermore, even if she had, Mr. Ladd would be entitled to absolute immunity as to such a claim.

### Sixth Amendment

Plaintiff further claims that Mr. Ladd violated the Perrys' Sixth Amendment right to have the assistance of an attorney of their choosing "without interference."  Compl., p. 5.  The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  Wheat v. United States, 486 U.S. 153, 158 (1988).  Plaintiff has not alleged that she did not have counsel in a criminal prosecution.  This claim fails.  Additionally, as it pertains to his role as a prosecutor, Mr. Ladd enjoys absolute immunity.

### Due Process

Finally, Plaintiff claims that Mr. Ladd violated the Perrys Fifth and Fourteenth Amendment rights of due process.  Compl., p. 5.  Plaintiff does not specify any procedural due process rights, but alludes to substantive due process rights as she argues that Mr. Ladd "entrapped" the Perrys.  "The Supreme Court has long recognized that the defense of entrapment 'is not of a constitutional dimension.'"  Vega v. Suthers, 195 F.3d

573, 583 (10th 1999) (quoting United States v. Russell, 411 U.S. 423, 433 (1973)).[4] The Seventh Circuit, however, has stated that "entrapment can constitute a form of government conduct that could violate due process." Kramer v. Village of North Fond du Lac, 384 F.3d 856, 865 (7th Cir. 2004).

Nevertheless, that court also recognizes that "substantive due process is among the stingiest of constitutional protections, and the Supreme Court has limited relief to instances where law enforcement violates 'fundamental fairness, shocking to the universal sense of justice.'" Id. (citation omitted). Ms. Perry ultimately pled guilty to the very charges brought after she claims she was entrapped. The court does not believe that the actions she alleges Mr. Ladd took – listening to Ms. Bridges and providing her with a recording device and fake order of exoneration – rise to the level of being shocking to the universal sense of justice. Even if his actions were in violation of Plaintiffs' due process rights, it would not have been clear to a reasonable agent that this conduct was unlawful in this situation. Accordingly, this claim fails as well and Mr. Ladd is entitled to qualified immunity.

**CIVIL CONSPIRACY**

Plaintiff claims that Mr. Ladd conspired with Ms. Bridges and other non-party conspirators to deprive the Perrys of their constitutional rights. "A civil conspiracy consists of two or more persons agreeing 'to do an unlawful act, or to do a lawful act by unlawful means.'" Peterson v. Grisham, 594 F.3d 723, 730 (10th Cir. 2010) (quoting Roberson v. PaineWebber,

---

[4]In an unpublished case, the District of Utah has stated that "the defense of entrapment may not be asserted as a basis for a cause of action under Section 1983." Smith v. Millet, No. 2:07-CV-723 TS, 2009 WL 3181996, at *6 (D. Utah September 28, 2009).

Inc., 998 P.2d 193, 201 (Okla. Ct. App. 1999)). A conspiracy "to injure another is not enough; an underlying unlawful act is necessary to prevail on a civil conspiracy claim." Id.

As discussed above, all of Plaintiff's constitutional claims fail. She has not pled an underlying unlawful act. Accordingly, this claim also fails.

**INTENTIONAL INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP**

Plaintiff claims that Mr. Ladd intentionally disrupted the relationship between the Perrys and their attorney, Ms. Bridges. According to the Complaint, Ms. Bridges approached Mr. Ladd, not the other way around. In any event, Mr. Ladd is immune from liability for torts, as all of the actions Plaintiff alleges were within the scope of his employment. 51 OKLA. STAT. § 152.1.

**MALICIOUS PROSECUTION AND ABUSE OF PROCESS**

Plaintiff argues in her Complaint that the "prosecution of the Perrys were willful and malicious acts to subvert and use the attorney-client relationship and judicial process for an ulterior purpose not proper in the regular conduct of the proceedings." Plaintiff further argues that "Defendants sole purpose was to harm the Perrys and put them out of business . . . ."

The elements of a malicious prosecution claim are: (1) initiation of the action against the plaintiff by the defendant, (2) termination of the action in favor of the plaintiff, (3) lack of probable cause to initiate the action by the arrest, (4) malice of the defendant (which . . . requires intentional or reckless disregard of the truth), and (5) damages." Fletcher v. Burkhalter, 605 F.3d 1091, 1095 (10th Cir. 2010). As Mr. Ladd argues, an action was never initiated against Mr. Perry. Mrs. Perry pled guilty, so she cannot satisfy the second element. This claim fails. Moreover, Mr. Ladd is entitled to absolute immunity with regard to his prosecutorial duties.

**CONCLUSION**

Craig Ladd's motion to dismiss [Docket No. 21] is hereby GRANTED.

IT IS SO ORDERED this 26th day of April, 2013.

**Dated this 26th day of April, 2013.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma